## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| LANCE FOSTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 2:09-CV-415 |
| | ) | (2:04-CR-80) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed by Petitioner on December 14, 2009. For the reasons set forth below, the motion is **DENIED.**

BACKGROUND

In 2004, Lance Foster ("Foster") was indicted as part of a multi-defendant drug conspiracy. The superceding indictment charged Foster with conspiracy to possess with intent to distribute crack cocaine, cocaine and marijuana (Count 2), and distribution of cocaine base (Count 7).

On February 22, 2005, a Plea Agreement was filed with the Court indicating that Foster would plead guilty to Count 2 of the superceding indictment (the conspiracy charge). The signed plea agreement indicated that Foster understood that the maximum possible penalty for the offense included a life term of

imprisonment. The plea agreement further provided that Foster understood that the minimum possible penalty to be imposed included a term of imprisonment of ten years.

The change of plea hearing was scheduled, but the hearing was continued on numerous occasions. Ultimately, on April 27, 2005, Foster indicated he wished to withdraw his plea agreement, and this Court allowed Foster to withdraw his plea agreement. Another change of plea hearing was scheduled for February 2, 2006, but Foster again decided not to go forward with the change of plea hearing. Trial was scheduled for October 30, 2006.

During this same period of time, Foster voiced many complaints about his counsel, Attorney Visvaldis Kupsis ("Attorney Kupsis"). On September 26, 2005, Foster filed a "Motion for Ineffective Assistance of Counsel." (DE 219). This Court held a hearing on the matter and Foster advised the Court that he wished to have Attorney Kupsis continue to represent him. (DE 220). In December of 2005, Attorney Kupsis filed a motion for leave to withdraw as Foster's counsel, indicating that Foster had advised him he was fired and that continuing representation appeared to be futile. (DE 239). This Court held a sealed hearing on this motion, allowing Defendant to state his reasons why he wishes to discharge Attorney Kupsis. The Court found no reason to discharge Attorney Kupsis. (DE 255). On February 17, 2006, Foster filed another letter expressing his disappointment in Attorney Kupsis. (DE 275).

This Court *again* held a hearing under seal to explore whether there was cause to remove Attorney Kupsis. Attorney Kupsis and Foster met privately, and then advised the Court that no additional hearing was necessary. (DE 274).

On October 20, 2006, just ten days before trial, the Government filed an Information Regarding Prior Conviction Pursuant to 21 U.S.C. section 851(a). The information relied upon a December 14, 1999, conviction in Lake County, Indiana, for possession of cocaine to seek increased punishment in the event of Foster's conviction. As a result, Foster's sentencing range became a minimum term of 20 years incarceration up to a maximum term of life incarceration. Foster proceeded with a jury trial, and was convicted of distributing cocaine base (Count 7), but found not guilty of the conspiracy charge (Count 2).

Foster was sentenced to a 240 month term of incarceration, the statutory mandatory minimum for his offense due to the Government's filing of the section 851 information. Because Foster was convicted on only Count 7, his applicable guideline range under the United States Sentencing Guidelines would have been 135-168 months incarceration[1] if the Government had not filed the 851 information. Foster appealed his conviction, and the Seventh Circuit affirmed the judgment against Foster. *United States v. Tanner*, 544 F.3d 793

---

[1]This is based on a total offense level of 32 and a criminal history category of II.

(7th Cir. 2008).

In March of 2009, Foster sought a reduction in his sentence due to amendments in the United States Sentencing Guidelines governing crack cocaine, pursuant to 18 U.S.C. section 3582. Attorney Kupsis was reappointed to assist with this matter, but after investigating Foster's claimed entitlement to a reduced sentence, sought leave to withdraw because he believed that the 20 year mandatory minimum sentence prevented a reduction in Foster's sentence. Foster's counsel was permitted to withdraw, and Foster was given leave to file a *pro se* motion for modification of his sentence, which he did not do.

Foster then initiated this *pro se* action seeking to vacate his sentence due to ineffective assistance of trial counsel. The Government initially responded by claiming that Foster's motion was untimely. Foster filed a reply brief on February 11, 2010. This Court found that Foster's motion was timely, and ordered the Government to provide a brief addressing the merits of Foster's claims. The Government provided the requested brief on May 24, 2010. Foster filed a reply brief on June 23, 2010. In October 2010, after briefing was complete, Attorney Cheryl Sturm appeared on behalf of Foster and was granted leave to file a supplemental reply on Foster's behalf. The supplemental reply was filed on November 12, 2010.

On February 9, 2011, this Court issued an order taking the

instant motion under advisement and setting this matter for hearing

on April 15, 2011.  That hearing was continued a number of times,

and ultimately occurred on June 22, 2011.  Following the hearing,

the parties requested an opportunity to obtain the transcript of

the hearing and further brief the issues.  Briefs were filed on

August 12, 2011, August 29, 2011, and September 8, 2011.  This

matter is now ripe for adjudication.


DISCUSSION

As described in this Court's order dated February 9, 2011,

Foster claims that his counsel was ineffective in several ways.

> First, Foster claims that his attorney was
> ineffective in that he should have known that
> Foster could receive an enhanced sentence due
> to his prior juvenile drug conviction before
> trial began, and that counsel was ineffective
> in making no effort to secure evidence needed
> to argue that such an enhancement was
> unconstitutional.  Next, Foster argues that
> his counsel was ineffective in failing to seek
> and/or secure a plea agreement once the
> Government had provided notice of its intent
> to seek an enhanced  sentence under 21 U.S.C.
> section 851.  Foster also claims that his
> counsel was ineffective in failing to
> investigate Foster's bad acts. Lastly, Foster
> claims his counsel was ineffective for failing
> to argue that his sentence over-represented
> his criminal history.

(DE 827 at 4-5).

This Court has previously found that most of these claims lack

merit.  (DE 827 at 12-14).  However Foster's claim that his counsel

was ineffective by failing to advise Foster that his mandatory

minimum sentence could be enhanced from ten to twenty years due to his prior juvenile drug conviction requires further analysis.

Habeas Corpus Relief

The law governing habeas corpus relief has already been discussed at length in this Court's previous order, but is reiterated here. Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. Untied States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

As indicated in this Court's previous order, in assessing Petitioners's motion, the Court is mindful of the well-settled principle that, when interpreting a *pro se* petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't.*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'"(quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746

(9th Cir. 2002)("pro se habeas petitioners are to be afforded 'the benefit of any doubt'")(quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

As with all allegations of constitutionally ineffective assistance of counsel, the analysis must begin with the Supreme Court's seminal case in this area, *Strickland v. Washington*, 466 U.S. 668 (1984). The test for ineffectiveness claims is exacting. To establish such a claim, a defendant must show that his attorney's representation was deficient, and that the deficiency prejudiced the defendant. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish deficient performance, a defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id*. This test is highly deferential to counsel, "presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (citations omitted). Thus, when examining the performance prong of the *Strickland* test, a court must "indulg[e] a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Galowski v. Berge*, 78 F.3d 1176, 1180 (7th Cir. 1996)(internal quotes omitted). Then, to establish the prejudice component of the *Strickland* test, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Wiggins*, 539 U.S. at 534. Such a "reasonable

probability" is "a probability sufficient to undermine confidence in the outcome." *Id*.

When viewed in the context of counsel's failure to properly advise a defendant of his sentencing exposure and, more specifically, where an attorney's alleged incompetence results in rejection of a plea agreement, the *Strickland* framework applies as follows. With regards to the performance prong of *Strickland*, a miscalculation of the possible sentence will not suffice; rather, the petitioner "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *VanWaeyenberghe v. United States*, No. 3:08-CV-456 RM; 3:04-CR-87(01)RM, 2009 WL 3294871 (Oct. 13, 2009 N.D. Ind.)(citing *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005).

With regards to the prejudice prong of *Strickland*, petitioner must show "(1) through objective evidence that (2) there is a reasonable probability that he would have accepted the alleged proposed plea agreement absent defense counsel's advice." *Paters v. United States*, 159 F.3d 1043, 1046 (7th Cir. 1998) (citing *Toro v. Fairman*, 940 F.2d 1065 (7th Cir. 1991)).[2]  A petitioner's sworn

---

[2]In *Paters*, the Seventh Circuit Court of Appeals determined that remand was necessary because the district court had utilized the wrong standard in determining whether the petitioner had demonstrated prejudice, and under the correct standard, petitioner was entitled to a hearing. The district court held the required hearing and then denied Paters' petition. Following the district court's denial, the case was again appealed. The

statement alone is not sufficient to satisfy the objective evidence required by the prejudice prong of the *Strickland* test. *See Paters*, 159 F.3d 1046; *VanWaeyenberghe*, 2009 WL 3294871 at \*10.

Where the Court finds that an attorney's alleged deficiency did not prejudice the defendant, it need not consider the first prong of the *Strickland* test. *United States v. Fudge*, 325 F.3d 910, 924 (7th Cir. 2003)(citing *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001).

Testimony at the hearing held on June 22, 2011

At the June 22, 2011 hearing, both Attorney Kupsis and Foster testified that Attorney Kupsis did not talk with Foster about the possibility of a sentence enhancement pursuant to 21 U.S.C. section 851 until ten (10) days before trial, after the Government filed its "Information Regarding Prior Conviction Pursuant to 21 U.S.C. § 851."

Attorney Kupsis explained that throughout the proceedings his focus was always on the maximum possible sentence, not the minimum. Based on the evidence he had, Attorney Kupsis believed the Government's case against Foster was very strong, that Foster was

---

Seventh Circuit, in an unpublished opinion, reiterated that to show prejudice in a case such as this a defendant must show through objective evidence that there was a reasonable probability that he would have accepted the proposed plea agreement in the absent of his counsel's advice. *See Paters v. United States*, No. 99-4123, 13 Fed. App. 392, 395 (7th Cir. 2001).

likely to be convicted of the conspiracy charge as well as the possession charge, and if convicted of the charged conspiracy, a life sentence was likely.[3]  Avoiding a life sentence was Attorney Kupsis' primary aim, Attorney Kupsis was not particularly concerned with the mandatory minimum sentence.  Because of his assessment of the strength of the Government's case, when Foster expressed an interest in withdrawing from the plea agreement, Attorney Kupsis claims he advised Foster that the plea agreement was in his best interest.

Foster, however, was more optimistic than his counsel about the results of his trial and testified that he was concerned about the mandatory minimum sentence.  Foster testified that if he had been told about the possibility of the enhancement under section 851 he would not have tried to get out of the plea agreement he had signed, or alternatively, he would have accepted the terms of a plea agreement offered at a later time.[4]  Foster further testified

---

[3]Attorney Kupsis testified that he was surprised by Foster's acquittal of the conspiracy, that it was viewed as a win for him, and that he was proud of the result.  It was perceived to be a win by others as well: people congratulated Attorney Kupsis on the result.

[4]This later plea agreement, titled "Second Amended Plea Agreement," would have required a plea by way of information to distributing a quantity of cocaine and would have capped his possible sentence at 20 years.  It is not clear whether the agreement was actually shown to Foster, but Attorney Kupsis testified that the terms of the offer were discussed with Foster and Foster acknowledges that Attorney Kupsis asked him if he would accept a plea agreement which would cap his sentence at 20 years.  Foster rejected the terms of this plea agreement.

that, with regards to his withdraw from the plea agreement he

signed, Attorney Kupsis did not give Foster his professional

opinion as to whether it was in Foster's best interest to go to

trial or to stay with the plea agreement.

Following his rejection of the second plea offer, Foster

insisted on proceeding to trial.  Attorney Kupsis testified as

follows regarding the exchanges between himself and Foster

following Foster's rejection of the second plea offer.

> That was the last offer I received from
> the government as far as this case was
> concerned.  And, quite honestly, we had a lot
> of heated discussions about that offer
> because, like I said, I kept saying, "You're
> looking at going to jail for the rest of your
> life on this conspiracy charge," and I
> honestly thought he was going to be found
> guilty of that.  I didn't think he had much of
> a chance based on the evidence that I saw.  I
> did not foresee that he was going to be found
> not guilty of the conspiracy, nor did I ever
> bring that up as a real possibility to him.
> My opinion was if we went to trial, he was
> going to be found guilty of both Counts Two
> and Seven and he was going to be looking at a
> life sentence.  That was what our argument
> was.  That was what our discussion was.
> Did I tell him that, hey, they were going
> to come in and file an 851 enhancement and
> you're looking at 20 years anyway? No, I
> didn't.  Should I have?  Maybe.  But the
> bottom line was my thing was you're going to
> go to jail for the rest of your life.  He said
> he didn't care, and at that point he said,
> "I'm going to trial."  Did that make sense?
> No.  Did we have a lot of heated discussions
> about that?  Yes.  But the bottom line is at
> the end of this case, for some reason, and

quite frankly, I believe because Duke Tanner got in his head, he said, "I'm going to trial." I disagreed with that vehemently. I kept telling him he was going to get a life sentence, and those were our discussions. He rejected the plea because he didn't want to stipulate to the weight, and he didn't want to stipulation to the gun.

(Tr. at 24-25). At one point, when discussing the risk of proceeding to trial, Foster told Attorney Kupsis that "20 years is life." (Tr. at 54).

Attorney Kupsis testified that even after the 851 enhancement was explained to Foster, he expressed no interest in pleading guilty. The following exchange occurred between AUSA Nozick and Attorney Kupsis at the hearing on June 22, 2011:

Q. Okay. Now, on October 20, 2006, I filed a notice of enhancement under 851 which would double the minimum mandatory penalties, correct?

A. That's correct.

Q. Okay. And did you convey that to him after I filed it?

A. We talked about it that day.

Q. Okay. And did he appear to understand?

A. He understood it. He wasn't happy about it, but he understood it.

Q. Okay. And at that point in time, did he say, Hey, wait a minute, you didn't tell me that could happen?

A. We didn't have that conversation. We did have a conversation about my re-approaching the government and trying to see if I could still salvage a plea agreement to at least the

-12-

20 because, again, my argument at that point
in time was the best we could do is 20 because
I can't see how you beat the possession charge
based on the evidence I've seen.

Q. Okay.    Now,  when  you  say  you  had  a
conversation  about  it,  you  discussed  coming
back to me and asking if he could still take
the plea agreement? That was your idea?

A. Well, yeah, that was my idea.  I asked him
do  you  want  me  to  broach  this  because  I  still
think - - my thought was you'd probably rather
get  him  out  of  the  way  and  concentrate  on  one
defendant.   That  was  my  thought.   And  that's
why  I  thought  I  could  probably  still  sell  it.
We were looking at 20 years.

* * *

Q. Okay. At any point after telling Mr. Foster
about  the  enhancement,  did  he  tell  you,  Go
back to AUSA, David Nozick, myself, and see if
he could still take the plea?

A. No, he didn't say that.  At that point in
time, he just kept insisting that he was going
to go to trial.

* * *

Q. Did he ever - - my question is, did he ever
ask  you,  come  back,  I  want  to  take  that  plea,
come  back  and  see  if  David  Nozick  will  still
let  me  take  the  plea  after  the  deadline  he
gave?

A. No, he never -- no.

Q. Is it fair -

A. From that ten-day period forward, he gave
no  indication  whatsoever  that  he  wanted  to
plea.   I  know  that  I  spoke  to  him  about  that
possibility, and I know I said I think I could
probably  still  make  this  work.   He  just  said
no,  he  didn't  want  to  do  it.   And  at  that
point in time, he sort of resigned - - I want

-13-

> to say "resigned" because I think that's kind
> of the emotion that he had, that he was going
> to go to trial.

(Tr. 48-52).

Foster, on the other hand, testified that Attorney Kupsis never adequately explained an 851 information, even after it was filed.

> My testimony today is Mr. Kupsis did not
> give me a full understanding as to how an 851
> worked at no point in time. He had knowledge
> of an 851 after it was being filed, but he
> didn't sit me down and fully inform me how it
> would work and how it would affect my sentence
> if I went to trial versus me taking a plea,
> no, he did not.

(Tr. at 77).


Attorney Kupsis' testimony is more credible than Foster's testimony.

Because Attorney Kupsis' testimony and Foster's testimony are inconsistent with one another in several respects, this Court must carefully consider the credibility of the witnesses. Credibility determinations should be based on all relevant circumstances. *See Cullen v. USA*, 194 F.3d 401, 407-409 (2nd Cir. 1999). Foster's attorney has correctly noted that Foster's testimony should not be rejected solely because it is self-serving, and that Attorney Kupsis' testimony should not be believed over Foster's simply because he is an attorney. However, it is also true that this Court is not required to wholly disregard these considerations:

they are part of the relevant circumstances.

In addition to being an officer of this Court, Attorney Kupsis testified against his own interest. Attorney Kupsis did not contest Foster's claim that he failed to advise Foster of the possibility of an 851 enhancement. Attorney Kupsis even conceded it was probably a mistake. Attorney Kupsis provided this testimony knowing that it could possibly lead to a finding that his performance was deficient.

Foster, on the other hand, testified in a manner that is self-serving. There is little to support Foster's claim that he would have pled guilty pursuant to a plea agreement but for Attorney Kupsis' error other than his own testimony. Additionally, Foster testified that when he was discussing withdrawing from the plea agreement with Attorney Kupsis, Attorney Kupsis did not give Foster his professional opinion as to whether it was in his best interests to go to trial or to stay with the plea agreement. (Tr. 64). The Court questions the veracity of this answer, as Attorney Kupsis has testified persuasively and in great detail to the contrary; it appears to this Court that Foster's honesty has yielded to his self interest.

This Court has considered the testimony of both Attorney Kupsis and Foster as a whole. After carefully observing both Attorney Kupsis and Foster, and after reviewing the testimony and the case as a whole, including this Court's first-hand observations

-15-

during the time leading up to Foster's trial, this Court finds the testimony of Attorney Kupsis more credible than that of Foster. More specifically, this Court credits Attorney Kupsis' testimony over Foster's testimony regarding the communication of the terms of the second plea agreement and discussions that followed and regarding what transpired upon the filing of the 851 information.

Foster has not demonstrated prejudice as a result of his counsel's allegedly deficient performance.

Although Foster argues that Attorney Kupsis was ineffective, there is some irony in this claim, as Attorney Kupsis' performance overall is reasonably viewed as highly effective; Foster was acquitted of the more serious of the two counts he was charged with, and Foster's sentence was much less than Attorney Kupsis had anticipated. Nonetheless, Attorney Kupsis concedes that he failed to advise his client of the possibility of an 851 information being filed as well as the effect of such a filing in advance of the information being filed. This Court, however, need not determine whether Attorney Kupsis' conduct satisfies the performance prong of the *Strickland* test, because Foster's claim fails the prejudice prong of *Strickland*.

Foster must show, through objective evidence, that there is a reasonable probability that he would not have withdrawn his plea agreement or would have accepted the plea offer tendered later if Attorney Kupsis had advised him of the possibility that the

Government would file an information under section 851. *Paters*, 159 F.3d at 1046.

Foster testified that if he had been advised that he was facing a possible mandatory minimum sentence of twenty years, he would have pled guilty. Even where such testimony is deemed credible, more is required to prevail on a claim of ineffective assistance of counsel. *See Paters*, 159 F.3d at 1046; *VanWaeyenberghe*, 2009 WL 3294871 at *8.

In granting Foster a hearing on this claim, this Court noted that Foster nearly went through with a plea agreement and that there is a strong suggestion that, if Foster's allegations regarding his counsel's misadvice were true, he would have went through with the plea agreement. However, when Foster had the opportunity to prove that there was a reasonable probability that he would have accepted a plea agreement absent Attorney Kupsis' alleged error, he did not succeed. In this case, rather than utilizing the hearing on this matter to produce additional objective evidence that he would have accepted the plea, the credible testimony at the hearing produced additional evidence to the contrary.

Foster's claim that he would have pled guilty if he had known of the enhancement is undercut by the credible testimony of Attorney Kupsis. Attorney Kupsis indicates he discussed the possibility of pleading guilty after the enhancement was filed and

after Attorney Kupsis had explained the effect of the enhancement to Foster. Attorney Kupsis testified to Foster's determination to go to trial, both before and after Foster learned of the enhancement under section 851. Although Foster initially expressed interest in pleading, and even signed a plea agreement and made a proffer, he changed his mind. Nobody knows exactly what caused Foster to change his mind, but from that point in time, every indication is that Foster was dead set against pleading guilty. Attorney Kupsis testified that at one point Foster stated that "20 years is life," which again suggests an unwillingness to accept any plea agreement that was believed likely to yield a sentence of nearly twenty years.[5] The evidence against Foster was strong, and Attorney Kupsis vigorously urged Foster to pled guilty. Foster rejected that advice. This testimony suggests Foster would not have accepted the plea even in the absence of counsel's alleged error.

The credible evidence before this Court shows that it was not Attorney Kupsis' error but Foster's complete unwillingness to plead guilty, even after being fully advised of the 851 information and its effects, that accounts for Foster's choice to go to trial. Foster has failed to demonstrate through objective evidence that

---

[5]Foster's best offer under any plea agreement offered to him would have resulted in a guideline calculation of 235 months incarceration at the low end of the range, five months less than the sentence Foster received.

there is a reasonable probability that he would have accepted either proposed plea agreement in the absence of defense counsel's alleged error.  For these reasons, the motion is **DENIED.**


CONCLUSION

For the reasons set forth above, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By A Person in Federal Custody is **DENIED.**


**DATED: February 14, 2012**          /S/RUDY LOZANO, Judge
                                      **United  States  District  Court**